IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIRGIL L. ROUNDTREE,

                **Plaintiff,**

        **v.**

INSTRUMENT & VALVE SERVICES
COMPANY,

                **Defendant.**

**Case No. 11 C 7580**

**Hon. Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Instrument & Valve Services, Company's ("IVS") Motion for Summary Judgment. For the reasons stated herein, the Court grants the motion.

## I.  BACKGROUND

In September 2007 Plaintiff Virgil Roundtree (hereinafter, "Roundtree" or "Plaintiff"), an African-American, began working at IVS as an employee of a temporary service company. When he began, his duties included sandblasting, priming, painting, and disassembling valves.

Shortly after Roundtree started, IVS Human Resources Director Steve Martin ("Martin") learned that Roundtree was interested in a valve technician position. Valve technicians at IVS are responsible for the maintenance and repair of a number of specific valves that IVS services. Since IVS was looking for a new valve technician, Martin reviewed Roundtree's resume and had a short

conversation with him to learn about his prior mechanical experience. After the conversation, Martin scheduled Roundtree for a formal interview.

A few days later, IVS managers Jeff Aquaviva ("Aquaviva") and Frank Manks ("Manks") interviewed Roundtree along with Martin. While Roundtree was under the impression that the interview went well, Martin, Aquaviva, and Manks thought otherwise. All three testified that Roundtree left an unfavorable impression because he failed to provide detailed answers to their questions. Additionally, during the interview, Roundtree stated that he did not have experience handling the valves IVS services.

Ultimately, IVS offered the position to a different applicant. IVS claimed this decision was based upon the other applicant's experience.

Shortly thereafter, IVS extended Roundtree an offer for a position as a utility technician. Def.'s L.R. 56.1 Statement of Fact ¶ 19. This was a new position IVS created. When Manks learned of the new position, he recommended Roundtree specifically. Manks thought Roundtree could use this position as "a pipeline to the valve technician position." *Id.* ¶ 21. Roundtree accepted the offer and started the new position on February 4, 2008.

Days after he started, a second valve technician position became available. Despite the fact that Roundtree had just started as a utility technician, he informed Aquaviva that he was

interested in the new valve technician position and inquired whether it was necessary to submit a new application. Aquaviva responded that a new application was unnecessary and told Roundtree he would pull his prior application for consideration. Eventually, IVS hired an applicant who had three years of experience with a competitor.

In approximately April 2008 (two months after Roundtree started as a utility technician), a third valve technician opening was announced. Once again, Roundtree notified Aquaviva of his interest. In doing so, he again inquired whether a new application was necessary. Aquaviva told him it was not, and again explained that he would submit Roundtree's initial application to the appropriate individuals.

Roundtree did not receive an offer for this position, either. Instead, IVS hired an applicant who had a substantial amount of valve repair experience in the Navy. *See, id.* ¶ 37.

A few months later, Manks began to notice a decline in Roundtree's work. Because of this, Manks decided to meet with Roundtree to ensure he understood the areas in which IVS required him to improve so he could reach his goal of becoming a valve technician.

Accordingly, on August 15, 2008, Manks gave Roundtree an oral and written performance review. The review stated the tasks Roundtree was doing well and the work upon which he needed to

improve to be considered for a position as a valve technician. Specifically, the performance review stated that Roundtree needed to demonstrate "the ability to assemble sliding stem diaphragm actuators and have a valve unit pass a leak test." *Id.* ¶ 58. Roundtree admits that prior to this time he had not demonstrated such ability. *Id.* The performance review concluded by noting that IVS would continue to provide Roundtree in-house training to assist him in reaching his career goals.

A few months later, Roundtree filed a charge of racial discrimination with the Equal Employment Opportunity Commission (the "EEOC"). While the record is unclear as to the disposition of this charge, it is undisputed that on October 15, 2008, Roundtree called the IVS ethics hotline to complain about racial discrimination. After IVS learned of the call, it interviewed several IVS employees to investigate the complaint.

Later in October 2008, a fourth valve technician position became available. While IVS contends Roundtree did not apply for this position, Roundtree insists he notified Aquaviva of his interest. Regardless, it is undisputed that IVS opted to hire a different applicant who had substantial valve experience in the Navy.

In the months that followed, Roundtree's frustrations at IVS began to escalate. In July 2009, a fellow employee reported him for telling a group of employees, "[i]f anything happens to my job,

I hope my friends here call in sick the next day because I wouldn't want any of them to get hurt or shot." *Id.* ¶ 65. When upper management confronted him regarding the allegations, he admitted to making the statement. *Id.* Because this was a violation of the violence policy at IVS, he received a "final written warning." *Id.*

On September 25, 2009, IVS terminated Roundtree's employment. In doing so, IVS informed Roundtree that he and another employee, Rich Kozora ("Kozora"), were being terminated because of "a nationwide reduction in force." *Id.* ¶ 67. IVS explained that Roundtree and Kozora were chosen to be let go because their positions as utility technicians were not essential since valve technicians had begun to absorb their responsibilities.

On October 25, 2011, Plaintiff filed his Complaint in this Court alleging racial discrimination. *See,* ECF No. 1. Count I alleges IVS is liable for employment discrimination. Count II alleges IVS is liable for retaliation under 42 U.S.C. § 1981. IVS has moved for summary judgment on both Counts.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could

affect the outcome of the case. *Id.* If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## III. <u>DISCUSSION</u>

IVS contends summary judgment is warranted on both Counts because there is insufficient evidence from which a reasonable jury could conclude that IVS discriminated or retaliated against Roundtree on the basis of race. It claims Roundtree cannot establish a *prima facie* case for either claim and also asserts a failure to mitigate defense.

### A. Count I - Discrimination under Title VII

In Count I, Roundtree alleges IVS is liable for violations of 42 U.S.C. § 2000e. This statute "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (citing 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims based upon race can be established in one of two ways – under a direct or indirect method of proof. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). Under either method, a plaintiff must establish that he suffered an adverse employment action. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

While the allegations in Roundtree's Complaint are not entirely clear, it appears that Roundtree claims he can sustain a

racial discrimination claim based upon three distinct adverse employment actions. First, he claims IVS is liable because it failed to promote Roundtree because he was African-American. Next, Roundtree contends IVS is liable for wrongful termination. Finally, Roundtree asserts IVS is liable because it subjected him to a hostile work environment. The Court will address each in turn.

### 1. *Failure to Promote*

Roundtree claims that IVS's failure to promote him to a valve technician position is evidence of racial discrimination under Title VII. He contends he can establish a claim under the indirect method of proof.

To establish a *prima case* in a failure to promote case, Roundtree must establish that "(1) he was a member of a protected group; (2) he applied for and was qualified for the position sought*;* (3) he was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the job." *Ghosh v. Ind. Dep't of Envtl. Mgmt.,* 192 F.3d 1087, 1090-91 (7th Cir. 1999).

IVS does not dispute that Roundtree can satisfy the first and third elements. As an African-American, Roundtree is a member of the protected group. It is also undisputed that he did not receive an offer for a position as a valve technician. The heart of the parties' disagreement lies in the second and fourth elements.

Roundtree claims he was as qualified as the applicants who received the offers for the positions; IVS believes otherwise. After reviewing the record, the Court finds an issue of fact exists. Because of this, the construes those facts in the light most favorable to Roundtree and assumes he can establish a *prima facie* case. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995).

Even with this assumption, Count I still fails. When a plaintiff proceeds under the indirect method in racial discrimination cases, the plaintiff must first establish a *prima facie* case, and then the burden of production "shifts to the defendant-employer to produce evidence of a legitimate nondiscriminatory reason for its employment decision." *Millbrook v. IBP*, 280 F.3d 1169, 1174 (7th Cir. 2002); *see also*, *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000) ("The ultimate question is whether the employer intentionally discriminated . . . [.]"). Assuming the employer provides such a reason, the burden then shifts back to the plaintiff to set forth evidence as to why the stated reason is pretextual. *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002)

While the Court finds IVS has provided legitimate nondiscriminatory reasons for each of the four employment decisions, Roundtree fails to present evidence of pretext. With respect to the first valve position, IVS contends that it hired

Phil Nelson ("Nelson") because of his "mechanical skills, critical thinking ability, his ability to explain processes in answering questions, detailed descriptions, education, [and] his previous experience having a responsibility for a fleet of 25 vehicles." Def.'s L.R. 56. Statement of Material Fact ¶ 14. Essentially, IVS believed Nelson was more qualified than Roundtree. This reason does not, on its face, suggest a discriminatory motive and thus allows the Court to conclude that IVS has satisfied its burden. *See, Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999) (an employer's opinion that one applicant was more qualified for a position is sufficient to determine that the reason was not discriminatory).

IVS provides similar explanations for the other three candidates. With respect to the applicant who was hired for the second valve technician position, John McKenna ("McKenna"), Roundtree admits that McKenna had significant experience with one of IVS's competitors. Pl.'s Resp. to Def.'s L.R. 56.1 Statement of Fact ¶ 26. It is also undisputed that McKenna had experience working in nuclear plants and steel mills, which IVS valued. *Id.* ¶ 33. Roundtree did not have such experience.

Dan Sanchez ("Sanchez") was hired for the third valve technician position. Roundtree admits that Sanchez had substantial experience in the Navy with valve repair and pumps. IVS claims

Sanchez's experience combined with his strong interview were the reasons he was offered the job.

IVS hired Dan Griner ("Griner") for the fourth valve technician position. It is undisputed that Aquaviva walked IVS's shop floor with Griner and Griner identified "what an actuator was, what a valve body was, [and] what the internal components of the assembly were." *Id.* ¶ 45. This combined with the fact that Griner had significant valve technician experience were the reasons why IVS chose to hire Griner.

While Roundtree disputes that these were the real reasons IVS chose these applicants over him, he fails to offer persuasive evidence that the stated reasons are pretextual. Instead, the only evidence he provides are his own assertions regarding the demographics of the area in which IVS is located. Specifically, he contends pretext can be established because IVS is located in a Chicagoland suburb with a large African-American population, and IVS has only hired only one African-American valve technician in the past ten years. IVS disputes this to be an accurate number of African-American valve technicians and argues the record evidence Plaintiff cites do not support such a proposition.

Even if it did, this evidence is not enough to establish pretext. *See, Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176-77 (7th Cir. 2002) (holding that to establish pretext a plaintiff must present a statistical analysis of the positions that became

available during the relevant time frame, "the number and race of the candidates applying for those positions, and the candidates' relative qualifications.") In *Millbrook*, the Seventh Circuit determined a plaintiff's statistical evidence that his manager did not hire any African-Americans into the position he sought for a period of one year was insufficient to "create a reasonable inference that [the employer] was lying when it explained that it hired [the other applicant] over [the plaintiff] because it believed [the other applicant] was better qualified." *Id.*

The same is true here. Roundtree's evidence is a far cry from a statistical analysis. The only support he provides is an internet article that recites the minority populations in all of Chicago's South Suburbs. IVS is located in Oak Forest, Illinois, one of those suburbs. Thus, any reference to the African-American population of the entire South Suburbs is both inaccurate and misleading. Moreover, Roundtree fails to provide any information regarding the number of applicants for each of the valve technician positions which he applied and fails to provide those applicants' demographic information. Without more, his "statistics" are insufficient to establish pretext.

Roundtree's other evidence is equally unavailing. He argues that pretext can be established by an isolated remark made by another valve technician. Roundtree claims that after he learned he did not get the offer for the third valve technician position,

another IVS valve technician said, "[Roundtree], you aren't going to get promoted.  We don't have black valve techs.  There hasn't been one here in 20 years."  Pl.'s L.R. 56.1(b) Statement of Add. Fact ¶ 26 (citing Ex. C, Roundtree Aff.).

Setting aside the fact that the statement is inadmissible hearsay, it is undisputed it was not made by a member of IVS who was in charge of the employment decisions at issue.  Because of this, the statement is insufficient to establish pretext.  *See, Maddox v. Jones*, 370 Fed.App'x. 716, 720 (7th Cir. 2010) (inadmissible hearsay cannot defeat summary judgment); *see also*, *Montcrief v. O'Neill*, 56 Fed.App'x. 734, 738 (7th Cir. 2003) ("[o]rdinarily only the racially inappropriate statements of the individual who made the final employment decision are relevant to determining whether the hiring process was tainted by discrimination.").

Accordingly, because Roundtree cannot establish that IVS's stated reasons are pretextual, his failure to promote claim under Count I fails.

### *2.  Termination*

Roundtree also asserts a claim under Title VII for his alleged unlawful termination.  While he acknowledges that IVS stated he was terminated because of a nationwide reduction in force, Roundtree argues this is merely a pretext for racial discrimination.  *Id.* ¶ 19.  He contends IVS fired him because he was African-American.

Claims for unlawful termination may be proved though direct evidence of impermissible motive, or indirectly through the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-03 (1973). Roundtree does not argue any direct evidence of impermissible motive exists, and no direct evidence is before the Court. Instead, Roundtree seems to rely upon on the indirect method. This method requires him to establish four distinct elements: (1) that he is a member of a protected class; (2) that he was performing at a level that satisfied his employer's legitimate expectations; (3) that he was subject to an adverse employment action; and (4) that he was treated differently than a similarly situated person outside the protected class. *See, McDonnell Douglas,* 411 U.S. at 802.

After reviewing the evidence, it is clear Roundtree is unable to establish the second and fourth elements. First, it is undisputed that in late July 2009, Roundtree received his final warning for vocalizing a threat of violence at IVS. *See.* Pl.s' Resp. to Def.'s 56.1 Statement of Material Fact ¶ 65. This was a violation of IVS's Violence in the Workplace Policy. *Id.* ¶ 66. This occurred only a few weeks before Roundtree was notified that he was being terminated due to a reduction in the workplace. As such, the Court cannot conclude that Roundtree can establish he was meeting IVS's legitimate expectations at the time of his termination.

Furthermore, Roundtree has failed to demonstrate evidence of a similarly situated employee outside the protected class receiving more favorable treatment. It is undisputed that Roundtree and Kozora, a Caucasian employee, were terminated because their positions as utility technicians had become non-essential. *Id.* ¶ 67. Roundtree does not offer evidence of another non-African-American utility technician who was not terminated after the nationwide reduction in force. Thus, Roundtree is unable to establish a *prima facie* case and his unlawful termination claim fails.

### 3. Hostile Work Environment

Finally, to the extent Roundtree claims IVS is liable for subjecting him to a hostile work environment, the claim also fails. To survive summary judgment on a hostile work environment claim, Roundtree must establish that (1) he was subjected to unwelcome harassment that was both subjectively and objectively offensive; (2) the harassment was based on his race; (3) the harassment was severe and pervasive enough to alter the conditions of his environment; and (4) there is a basis for employer liability. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). An employer is liable if the plaintiff's supervisor created the hostile work environment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Roundtree fails to establish any of the above elements. First, Roundtree admits that the basis of his hostile work environment consists only of the following contentions: (1) that his lunch was missing twice from the IVS refrigerator; (2) that on five occasions when he came back from lunch his radio was switched to a different station; (3) that on one occasion there were splotches of mud on his truck; (4) that he once overheard a co-worker saying to another co-worker that she was "tired of Black people complaining about discrimination[;]" and (5) that he was disciplined for making a threat of violence. *See,* Pl.'s Resp. to Def.'s L.R. 56.1 Statements of Material Fact ¶ 68, ECF No. 56, PageID #68.

Even if the Court determined that these allegations were both objectively and subjectively offensive, the record is void of any evidence which establishes that these conditions were pervasive enough to alter the conditions of Roundtree's employment. *See, Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). ("mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating" is insufficient to create a hostile work environment).

Moreover, Roundtree fails to demonstrate that any of his supervisors were responsible for creating any of the conduct described above. While he claims a stray remark was made

referencing African-Americans, he admits that this remark was made from one co-worker to another. This is insufficient to establish employer liability. *Parkins*, 163 F.3d at 1032. Therefore, the hostile work environment fails.

Plaintiff is unable to sustain an employment discrimination claim for any of his three distinct adverse employment actions. Thus, the Court finds IVS is entitled to summary judgment with respect to Count I.

## B. Count II - Retaliation

Count II asserts a retaliation claims under Title VII. Plaintiff contends IVS is liable because it terminated his employment after he filed his charge of discrimination with the EEOC.

Similar to discrimination claims under Title VII, a plaintiff suing for retaliation can proceed using either the direct or indirect method of proof. *See*, *Hobgood v. Illinois Gaming Bd.*, --- F.3d ---, No. 11-1926, 2013 WL 3599498 at *5 (7th Cir. July 16, 2013). Roundtree fails to specify which method he chooses to proceed. Under either method, however, the claim fails.

To establish a retaliation claim under Title VII using the direct method a plaintiff must offer evidence that (1) he engaged in a protected activity; (2) he was subject to an adverse employment action; and (3) there was a causal link between the

protected activity and the employment action.  *Brown v. Advocate South Suburban Hosp.,* 700 F.3d 1101, 1106 (7th Cir. 2012).

While it seems likely that Roundtree can establish the first two elements, he fails to establish a causal connection.  Indeed, to survive summary judgment, Roundtree must present evidence from which a reasonable jury could find that IVS decided to terminate him because of his various complaints and charges of discrimination.  *See, University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (June 24, 2013) (Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action).  Direct evidence of causation requires something akin to an admission from IVS that it terminated Roundtree because he engaged in a protected activity.  *See, Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).  The record is void of any such evidence.

Additionally, the Court finds the time between Roundtree's protected activities and his alleged adverse employment actions too long to infer retaliatory intent.  As previously noted, Roundtree's protected activities include his EEOC charge in September 2008 and his call to IVS's ethics hotline in October 2008.  The only adverse employment actions that occurred after this time include the final warning Roundtree received after violating company policy in July 2009 and his termination in September 2009.  This is more than nine months and too long to infer causation.  *See, Leonard v. Eastern*

*Illinois University*, 606 F.3d 428, 432 (7th Cir. 2010) (six month gap between the plaintiff's complaint and the unsuccessful interview was too long to infer a connection).

Roundtree cannot survive summary judgment under the indirect method either.  To establish a retaliation claim under the indirect method, a plaintiff must demonstrate that (1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity.  *See, Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).  Roundtree fails to offer any evidence to satisfy the fourth element and therefore fails to establish a *prima facie* case.

In addition to this, after IVS pointed out the deficiencies in the retaliation claim in its motion for summary judgment, Roundtree failed to provide any response or reason why the claim should survive.  In fact, in his response brief, Roundtree never even mentions his retaliation claim.  This is yet another reason why summary judgment with respect to Count II is appropriate.  *See, Cent. States Se. and Sw. Areas Pension Fund v. Midwest Motor Express*, 181 F.3d 799, 808 (7th Cir. 1999) (stating "a district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment.  Instead the

court can rely upon the non-moving party to show such a dispute if one exists."). Thus, summary judgment as to Count II is warranted.

### IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment [ECF No. 36] is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: September 10, 2013